IN THE FIFTEENTH JUDICIAL CIRCUIT IN AND FOR PALM BEACH COUNTY, FLORIDA

DEBORAH NASH-UTTERBACK,

Plaintiff,

vs.

CASE NUMBER:

50 2011 CA 005295 XXXXMB AB

PALM BEACH COUNTY SCHOOL BOARD,

Defendant.

_____/

9:10 a.m
4/11/11
#1429 R.R.

COPY
RECEIVED FOR FILING
APR 0 8 2011
SHARON R. BOCK
CLERK & COMPTROLLER
CIRCUIT CIVIL DIVISION

## VERIFIED COMPLAINT

1. Plaintiff, DEBORAH NASH-UTTERBACK, through counsel, sues defendant, PALM BEACH COUNTY SCHOOL BOARD for violations of her rights under the First Amendment to the United States Constitution, actionable under 42 U.S.C. Section 1983.

### JURISDICTION AND VENUE

2. Jurisdiction is proper in this court as the amount in controversy exceeds $15,000.

3. Venue is appropriate in this Court because all claims in this action arose, all acts complained of occurred, and defendants were, at all times relevant located or doing business within Palm Beach County, Florida.

### PARTIES

4. Plaintiff is a natural person residing in Palm Beach County, Florida.

5. Defendant SCHOOL BOARD, is a local governmental entity created and operating under the laws of the State of Florida and located within Palm Beach County, Florida.

## FACTS

6. Plaintiff now is, and was, a long term employee of the Defendant, who is now employed as an Assistant Principal at Royal Palm Beach High School.

7. Beginning on or about 2004-2005 and 2006-2008, Plaintiff sought and was granted a leave of absence by the Defendant to create and lead a Charter School called Boca Raton Charter School, Inc., to be located in Boca Raton, Florida.

8. In order to save money and tax dollars for the creation and development of said Charter School, Plaintiff attempted to have the Defendant permit her school to operate on the site of the original J.C. Mitchell Elementary School, a building that the Defendant had slated for demolition to build a new school on an adjoining site, according to F.S. 1002.33 Charter Schools (18)e Facilities.

9. The original J.C. Mitchell building was up to code, had no major renovation needs, was a fairly new building (11 years old), having been constructed in the 1993, and Plaintiff determined that said site would be an ideal location for her Charter School operation.

10. The Defendant, through former Superintendent Art Johnson, refused to allow Plaintiff to use said facility, and over Plaintiff's protests against waste of taxpayer dollars, demolished said building in June 2005. Plaintiff's protests, in writing, and verbal, including presentations she made to the Defendant at public meetings, went from January, 2005 until February, 2007, when the building was destroyed unnecessarily. Plaintiff also lobbied Boca Raton City Council, former Governor Jeb Bush and Attorney General, Charlie Crist to stop the unnecessary and wasteful demolition of a perfectly functional building, angering Mr. Johnson, who had to respond to inquiries for information from these elected officials and their staff. In retaliation, on May 5, 2007, Plaintiff was demoted from Administrator (multi-year administrative contract) to Annual Instructional Position (teacher) while on approved Charter School leave of absence, in violation <u>Florida Statute 1002.33 Charter Schools (4)a Unlawful Reprisal and 1002.33 Charter Schools (12)e Employees of Charter School.</u>

11. Mr. Johnson was an ardent opponent of Charter Schools in Palm Beach County, and sought to impose more control over them under his dictatorial style of leadership. Specifically, he sought at State Board of Education meetings, held September 18, 2007 and October 16, 2007, to gain exclusive control of the 35 established Charter Schools in Palm Beach County at a forum hosted by the State of Florida State Board of Education (exclusive authority to authorize Charter Schools in Palm Beach County).

12. Said organization invited members of Charter Schools in Palm Beach County to submit written document of abusive practices towards Charter Schools and provide testimony in favor or against said proposal in meetings convened before the State Board of Education in Tallahassee and to cite specific examples of interference and/or mistreatment by the Defendant against Charter Schools here. Plaintiff submitted written documentation as requested by FLDOE and testified orally in hearings before the State Board of Education regarding "exclusive authority for Charter Schools" offering specific examples of mismanagement and interference by Mr. Johnson and his staff, including, but not limited to: withholding FTE funding dollars of $72,000 from the school for 14 months.

13. Plaintiff's testimony was critical of Mr. Johnson, and of his policies and actions against Charter Schools in Palm Beach County and in general Boca Raton Charter School.

14. Thereafter, Mr. Johnson retaliated against the Plaintiff by creating a new policy and recommending to the School Board, Policy 3.80, on or about February 27, 2008, which policy, in violation of State law, §1002.33 (4) a and 1002.33 (12) e, Fla. Stat., sought to and forced the Plaintiff to resign her position as a Principal from the Charter School she founded and return as an employee of the Defendant under Mr. Johnson's thumb.

15. Said Policy 3.80 provided that employees of the Defendant who were on leave to open and operate a Charter School must resign their position with the Defendant, and thereby lose FRS pension benefits that were accumulating during their leave.

16. Plaintiff, after consulting with the legal counsel of her Charter School, determined that if she did not resign her position as the principal of the Charter School, given this new Policy imposed by Mr. Johnson, she would stand to be terminated from her employment as an employee of the Defendant on leave and lose her benefits thereby the opportunity to purchase retirement benefits for years while on Charter School leave of absence.

17. At said time, there was an opening for an Assistant principal near to the Plaintiff's home in Boca Raton at Spanish River High School. Plaintiff was fully qualified for this position, had worked for years as an Assistant Principal and received outstanding evaluations for her work. A former employee notified the District of resignation on May 13, 2008, and resigned effective June 13 ,2008, making this same position in Boca Raton available.

18. Mr. Johnson, and or his agents and employees, caused the Plaintiff to be denied this position in Boca Raton where Plaintiff worked for the District for 23 years and instead placed her at Royal Palm Beach High School, some 76 miles round-trip (2 hour drive) from her home in Boca Raton, requiring her to travel not only north but also west of her home daily.

19. Plaintiff's forced resignation as a Charter School Principal and her assignment to a relatively distant school were retaliatory actions for her activities in opposing Mr. Johnson's actions against Charter Schools in public spoken and written statements, which statements were a matter of public concern and thus protected under the First Amendment.

20. Mr. Johnson also engaged in retaliatory conduct against the Plaintiff's husband, an employee of the Defendant who worked as a an Assistant Principal at Santaluces Community High School. Mr. Utterback was recommended for non-reappoint in May 5, 2009, despite having performed well for 19 years of his employment with the Defendant. Mr. Utterback was able to challenge the proposed action of Mr. Johnson, but he and the Plaintiff suffered expenses, anxiety and mental anguish over Mr. Johnson's retaliatory actions.

### COUNT I - 42 U.S.C. SECTION 1983

21. Plaintiff realleges and incorporates by reference paragraphs 1 through 20.

22. This action is brought by Plaintiff against Defendant Plaintiff's right of free speech and association as guaranteed First Amendment to the United States Constitution are actionable pursuant to 42 U.S.C. § 1983.

23. Defendant's actions against Plaintiff, as set forth above, violate Plaintiff's rights of association, which includes the right to associate with other charter schools and lobby for their mutual benefit and protection, to lobby elected officials to prevent the waste and misexpenditure of public tax dollars and to publicly oppose the unlawful and wasteful actions of the Defendant, Mr. Johnson.

24. At all times relevant hereto, Mr. Johnson, as Superintendent, made decisions that adversely affected Plaintiff's employment status as a Charter School Principal and promulgated policies which policies were rubber stamped by a docile Board of said Defendant.

25. As a result of the Defendant's actions, Plaintiff has suffered lost wages and benefits, suffered harm to her reputation, mental and emotional anguish, and other damages including loss of career advancement opportunities.

WHEREFORE, Plaintiff respectfully requests the following relief against Defendant:

(a) Lost wages, compensatory damages and injunctive relief to reinstate the Plaintiff to her position as Charter School Principal on leave in accordance with State law;

(b) Reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

(c) Any such further relief as this Court deems just and proper.

UNDER PENALTY OR PERJURY, I attest that the factual allegations set forth above are true and correct to the best of my knowledge and belief.

*Deborah Nash-Utterback*
DEBORAH NASH-UTTERBACK

**TRIAL BY JURY IS DEMANDED AS TO ALL ISSUES SO TRIABLE**

Respectfully submitted,

ISIDRO M. GARCIA
Florida Bar No. 437883
GARCIA LAW FIRM, P.A.
224 Datura Street, Suite 900
West Palm Beach, FL 33401
Telephone:(561) 832-7732
Telecopier: (561) 832-7137
e-mail: isidrogarcia@bellsouth.net
COUNSEL FOR PLAINTIFF

Dated: April 4, 2011